IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LAWSON REED RANKIN | No. 6:20-cv-01763-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| SHERIFF CURTIS LANDERS, DEPUTY COLMENERO, DEPUTY BEUTLER | |
| Defendants. | |

Lawson Reed Rankin
Lincoln County Jail
251 West Olive St.
Newport, OR 97365

    Plaintiff Pro Se

Aaron Hisel
901 Capitol St NE
Salem, OR 97301

    Attorney for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Pro se Plaintiff Lawson Reed Rankin, an adult in custody ("AIC") at the Lincoln County Jail, brings this action against Sheriff Curtis Landers, Deputy Colmenero, and Deputy Beutler under 42 U.S.C. § 1983 ("Section 1983"). Defendants moves for summary judgment. For the following reasons the Court grants the motion.

## BACKGROUND

Plaintiff makes several distinct allegations in his Amended Complaint, although most relate to jail staff's conduct during daily cell searches. First, Plaintiff alleges Defendant Landers does not allow him to observe searches of his cell. Am. Compl. at 3, ECF 48. Next, he alleges that Defendant Beutler has read his legal documents during cell searches and "regularly interrogates AICs in efforts to turn them against each other." Am. Compl. at 3.

He then makes allegations related to the sanitary practices of jail staff during cell searches. He alleges officers, "'especially,' Deputy Colmenero," step on clean beds during searches and fail to change their gloves after digging in the trash and in between separate cell searches. Am. Compl. at 4. Plaintiff alleges these practices are "unsanitary in the midst of [the] covid-19 [pandemic.]" Am. Compl. at 4.

Finally, Plaintiff complains about the grievance procedures at the Lincoln County Jail. Am. Compl. at 2-3. Per the Lincoln County Jail "In Custody Handbook," AICs "have 24 hours from the time of an incident to file a grievance" and "24 hours from each time [their] grievance is denied to file [their] next step." Declaration of Marie Gainer ("Gainer Decl.") Ex. 1 at 3. Plaintiff alleges that Defendant Landers prevents him from using the grievance process because these rules require AICs to grieve issues and respond within 24 hours but allow staff an unlimited amount of time to respond. Am. Compl. at 2-3.

2 – OPINION & ORDER

On October 13, 2020, Plaintiff filed this action. Compl., ECF 2. He brings three claims for relief under Section 1983. Am. Compl. Defendants move for summary judgment on all claims.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more

persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants move for summary judgment arguing that Plaintiff's claims two, three, and part of claim one are barred under the Prison Litigation Reform Act ("PLRA") because he failed to exhaust his administrative remedies prior to filing suit. Plaintiff contends that he complied with the grievance procedure and that as for Claim Two the grievance procedure was unavailable to him.

**I.    Failure to Exhaust**

Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, however, only as long as "administrative remedies ... are available." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (internal quotation marks omitted).

Exhaustion is an affirmative defense "that must be pled and proved by a defendant." *Id.* at 1168. The defendant has the burden to prove that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once a defendant has made such a showing, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and

generally available administrative remedies effectively unavailable to him." *Id.* Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust. *Id.* at 1166, 1172.

### A.    Claim II

In Plaintiff's second claim for relief, he alleges that the Lincoln County Jail grievance policy is unfair because it requires AICs to grieve incidents within 24 hours but allows Lincoln County Jail staff an unlimited amount of time in which to respond. Am. Compl. at 3-4. Plaintiff filed grievances related to this topic on September 15, 2020 and September 20, 2020. Gainer Decl. ¶ 7, ECF 92; Gainer Decl. Ex. 3, ECF 92-3. The final step of the grievance procedure was completed on October 30, 2020, after he had initiated this lawsuit. Thus, Plaintiff failed to timely grieve this issue and Defendants have met their burden to show that he failed to exhaust his administrative remedies with respect to this claim.

Plaintiff argues in the alternative that the grievance procedure was unavailable to him because the policy itself makes the grievance procedure futile. He argues that the amount of time Defendants took to respond to his grievances was "unreasonable." Pl. Surreply at 3, ECF 107. Defendants responded to Plaintiff's grievance on the same day it was filed. Gainer Decl. Ex 3 at 1. He then asked for the grievance to be moved to Step Two. *Id.* at 2. Defendants responded to this request 36 days later and then moved the grievance through the final steps within the following 8 days. *Id.* at 2-6.

"Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." *Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005). Although there is no "bright-line rule that any delay in a prison's response to an

5 – OPINION & ORDER

inmate's grievance is sufficient to render administrative remedies unavailable." *Fordley v. Lizarraga*, 18 F.4th 344 (9th Cir. 2021).

A 36-day delay in responding to a grievance at a county jail may be sufficient to render an administrative remedy unavailable depending on the nature of the claim. Here, Plaintiff grieved the grievance procedure itself, not a time-sensitive or emergent matter. *Compare Id.* (emphasis added) (finding "the prison's failure to respond to [plaintiff's] *emergency* grievance over the course of several months rendered [plaintiff's] administrative remedies unavailable."). In this context, the 36-day delay was not so unreasonable as make his administrative remedies unavailable. And, even if Plaintiff could show that the grievance procedure was unavailable to him, this claim fails as a matter of law because there is no "separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Moody v. Martinez*, 42 F.3d 1401 (9th Cir. 1994) (finding no "constitutional entitlement" to a state's grievance procedures"). The Court grants Defendants summary judgment on Plaintiff's Claim Two.

B.     Claim III

In Plaintiff's third claim for relief, he alleges that several officers "step on clean beds" and fail to change their gloves after "digging in the trash (searching)" and between cell searches. Am. Comp. at 4. Plaintiff filed two grievances related to these claims. *See* Gainer Decl. Ex. 4 (filed October 19, 2020); Gainer Decl. Ex. 5 (filed October 25, 2020). Both were filed after Plaintiff initiated this lawsuit and are untimely for exhaustion purposes. *Id.*

Plaintiff contends that he did timely grieved these claims through a different grievance and directs the Court to his Exhibit one. Plaintiff's Exhibit one is a grievance he filed on August 23, 2020. In it he writes:

> "I have been in lincoln county jail since july 22, 2020. Since i have been placed in e pod i have been getting searched daily with no regard to my legal documents. With that being said, i am being harassed by officers, by means of cell searches daily including my legal documents being search without my presence. This is a violation of my 4th and 8th u.u. Constitution amendment rights as a u.s. Citizen. Can you please stop. Thank you. I ment u.s. Costitution amendments 8th and 4th."

Rankin Decl. Ex. 1 at 1, ECF 101.

This August 2020 grievance is not sufficiently related to the allegations of stepping on beds and failing to change gloves to satisfy the exhaustion requirement for this claim. "[A] prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Lincoln County Jail grievance policy that appears in the "In Custody Handbook" does not specify the level of detail required. Gainer Decl. Ex. 1 at 2-3. In the Ninth Circuit, "when a prison's grievance procedures do not specify the requisite level of detail" needed to exhaust a claim, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120 (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

The August 2020 grievance does not suffice to alert the prison to the "nature of the wrong for which redress is sought." *Id.* This grievance relates to daily cell searches and allegations that Plaintiff's legal documents are being searched. Rankin Decl. Ex. 1 at 1. Claim Three focuses on the hygiene practices of officers conducting cell searches. The vague reference to "harassment" in the August 2020 grievance would not alert the prison to the problem of stepping on beds and a lack of glove changing. In fact, when Plaintiff did specifically grieve the glove changing issue, Lincoln County Jail updated its processes. Gainer Decl. Ex 5 at 3. The Court finds Plaintiff failed

7 – OPINION & ORDER

to properly exhaust his administrative remedies with respect to Claim Three and grants Defendants summary judgment on this basis.

### C.  Claim I(C)

In Plaintiff's first claim for relief, he alleges that (1) his cell was searched without his presence, (2) Deputy Beutler read his legal documents, and (3) Deputy Beutler conducted inappropriate interrogations of other AICs. Am. Compl. at 3.

Defendants concede Plaintiff exhausted his administrative remedies with respect to the first and second allegations in Claim One. Defendants contend that the third allegation is not mentioned in any of Plaintiff's timely filed grievances and that Plaintiff did not satisfy the exhaustion requirement for this allegation. Plaintiff does not respond to this contention directly. In his surreply, he argues that he is not required to grieve issues with particularity, although he still does not identify which grievance even generally addresses these allegations.

As discussed above, the grievance must alert the jail to "the nature of the wrong for which redress is sought" to satisfy the PLRA's exhaustion requirement. *Griffin*, 557 F.3d at 1120. Plaintiff has not demonstrated that he submitted a grievance that alerted the prison to Defendant Beutler's alleged inappropriate conduct. Accordingly, because Plaintiff failed to exhaust his administrative remedies, the Court grants Defendant's motion for summary judgment on the allegations related to inappropriate interrogations in Claim One.

### II.   Merits

Defendants concede Plaintiff properly exhausted his administrative remedies with respect to the allegations related to cell searches in Claim One. Defendants argue that these claims fail as a matter of law.

//

//

8 – OPINION & ORDER

A.     **Observation of Cell Searches**

Plaintiff argues Defendant Landers violated his constitutional rights by not allowing him to observe sell searches. Defendant Landers contends that he has not prevented Plaintiff from observing cell searches because he can observe from the dayroom and that regardless Plaintiff has no right to be present during cell searches. Plaintiff responds that his view of cell searches from the dayroom is inadequate.

In his deposition, Plaintiff stated that when he has asked officers to be present during cell searches, he is told to go to the "dayroom." Declaration of Aaron P. Hisel ("Hisel Decl.") Ex. 2 ("Rankin Dep.") 33:13-34:9. From the dayroom, he can see his cell, but he stated that his long-distance vision is not good. *Id.* 34:10-19. In Plaintiff's response he writes that you cannot "see much" from the day room, especially of his corner cell. Pl. Resp. at 11. He also contends that at other times Defendants have searched his cell without first asking if he would like to be present. *Id.*

In *Bell v. Wolfish*, the Supreme Court contemplated a room search practice of a custodial facility "designed primarily to house pretrial detainees."441 U.S. 520, 523 (1979). The practice entailed "unannounced searches of inmate living areas at irregular intervals" where inmates were not permitted to observe the searches. *Id.* at 555. The Court held that this practice did not infringe the inmates Fourth Amendment rights and facilitated "the safe and effective performance of the search." *Id.* at 557.

Accordingly, Plaintiff does not have a constitutional right to be present during cell searches. And as Defendants point out, the policy of allowing Plaintiff to observe from the dayroom is well within the ambit of the cell search protections afforded by the Constitution. The Court grants Defendants summary judgment on this portion of Claim One.

B.      **Allegations Against Defendant Beutler**

Plaintiff asserts that Defendant Beutler violated his constitutional rights by reading his legal documents during cell searches. Defendants contend that these allegations lack the requisite detail. Plaintiff responds that Defendant Beutler has read his legal documents during cell searches and submits an affidavit in support of his allegations.

"The Supreme Court has held that prison officials may open mail which is clearly marked 'legal mail' to inspect it for contraband, if the mail is opened in the presence of the inmate." *Marquez v. Miranda*, 12 F.3d 1107 (9th Cir. 1993) (citing *Wolff v. McDonnell,* 418 U.S. 539, 577 (1974)). However, prison officials may not read an inmate's correspondence with an attorney representing them in a criminal case. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014); *Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1211 (9th Cir. 2017) ("prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence").

To state a constitutional claim for legal mail that was opened and read outside an inmate's presence, a plaintiff must allege that the mail was from an attorney and that the mail "was properly marked as 'legal mail.'" *Hayes*, 849 F.3d at 1211; *see also Marquez,* 12 F.3d 1107 (affirming the district court's dismissal of a qualified immunity defense where the plaintiff alleged prison officials searched his cell and "carefully read the contents of envelopes marked 'confidential legal mail.'"). Further, a plaintiff must allege that prison official deliberately opened the inmate's legal mail. *Hayes,* 849 F.3d at 1212 ("Hayes has alleged a plausible claim that his protected mail was arbitrarily or capriciously opened outside his presence on two separate occasions.") (emphasis added); *id.* at 1218 ("An allegation that prison officials opened a

prisoner's legal mail, without an allegation that the mail was deliberately and not negligently opened, is not sufficient to state a cause of action under § 1983.") (Bybee, J., concurring).

In his Amended Complaint, Plaintiff alleges, "I've witnessed Deputy Beutler, on multiple occasions, "'reading' my legal documents" and "Beutler uses the documents/information gathered from his illegal searches through legal work product." Am. Compl at 3. In his sworn affidavit, Plaintiff states:

> Deputy Beutler searched every page of my legal documents and tore my cell inside out for the state "Ms. Danforth." While the search took place the state "Ms. Danforth" was in booking an I was to, in a little cell alone, then the state attempted to cover my window, so I couldn't see, however, I could still clearly see through the tip of the window that was left visible.

Declaration of Lawson Reed Rankin ("Rankin Decl.") Ex. 8.

On summary judgment, the Court accepts all allegations of material fact as true and construe them in the light most favorable to the plaintiff, the non-moving party. *Nordstrom*, 762 F.3d at 908. Even accepting Plaintiff's facts as true, Defendants are entitled to summary judgment on this claim. Plaintiff makes multiple references to Defendant Beutler reading his "legal documents." He does not however establish that the documents were properly marked as "confidential legal mail" or were marked as correspondence with an attorney. *Hayes*, 849 F.3d at1212; *Mangiaracina*, 849 F.3d at 1198. Plaintiff did not provide more details about these allegations at his deposition. Rankin Dep. 62:17-70:18. He stated instead that he believed Defendant Beutler had previously searched his cell for a witness statement at the behest of the prosecution in his criminal case, but that he did not obtain the witness list because it was not in Plaintiff's cell at the time of the alleged search. Rankin Dep. 69:3-6. Accordingly, Plaintiff has not submitted evidence that creates a triable question of fact about whether Defendants violated his constitutional rights by improper reading of his legal documents.

11 – OPINION & ORDER

**CONCLUSION**

The Court GRANTS Defendant's Motion for Summary Judgment [90]. This action is dismissed without prejudice.

IT IS SO ORDERED.

DATED: ___December 21, 2021___.

                                        _____
                                        MARCO A. HERNÁNDEZ
                                        United States District Judge